# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MARICAR R. ROBERTS,<br><br>      Plaintiff,<br><br>v.<br><br>BAYHEALTH MEDICAL CENTER, INC.,<br><br>      Defendant. | Civil Action No. 23-330-RGA |

## MEMORANDUM OPINION

Gary E. Junge (argued), SCHMITTINGER & RODRIGUEZ, P.A., Dover, DE,

    Attorney for Plaintiff.

Stacy A. Scrivani, Alexis R. Gambale, STEVENS & LEE, P.C., Wilmington, DE; Lisa M. Scidurlo, STEVENS & LEE, P.C., King of Prussia, PA; Michael M. Greenfield (argued), Sasha A. Phillips, STEVENS & LEE, P.C., Philadelphia, PA; Theresa M. Zechman, STEVENS & LEE, P.C., Lancaster, PA,

    Attorneys for Defendant.

January 31, 2024

1


**ANDREWS, U.S. DISTRICT JUDGE:**

Before me is Defendant's Motion to Dismiss. (D.I. 10). I have considered the parties' briefing. (D.I. 11, 12, 14). I heard oral argument on January 4, 2024 on a group of cases, including the present action, involving religious discrimination claims with regards to Defendant's COVID-19 vaccine policy. (Hearing Tr.).[1] For the reasons set forth below, this motion is GRANTED in part and DISMISSED as moot in part.

## I.   BACKGROUND

This case stems from the COVID-19 pandemic and a healthcare provider's efforts to respond to government vaccination policy. The Complaint (D.I. 1) alleges the following facts.

On August 12, 2021, Governor John Carney ordered all Delaware state health care employees either to become vaccinated for the COVID-19 virus by September 30, 2021 or to submit to regular testing for the COVID-19 virus. In November 2021, the Centers for Medicare & Medicaid Services ("CMS") issued a COVID-19 vaccine mandate requiring certain health care facilities, including Defendant, to ensure their staff members were all either vaccinated against COVID-19 or had obtained medical or religious exemptions to taking the vaccine.

Pursuant to Defendant's vaccination policy, employees seeking religious exemption requests were required to submit forms explaining the religious beliefs that formed their basis of their objection to the COVID-19 vaccine. (*See* D.I. 1-1, Ex. A). Employees could attach additional materials, such as letters from religious leaders, to support their exemption request. (*Id.*).

Employees who had their religious exemption requests rejected, and continued to refuse the COVID-19 vaccine, were terminated on February 28, 2022. Plaintiff was one of these

---

[1] Citations to the transcript of the argument are in the format "Hearing Tr. at __."

employees. Plaintiff subsequently filed the present suit raising religious discrimination claims against Defendant under Title VII (Count I) and the Delaware Discrimination in Employment Act ("DDEA") (Count II). *See* 42 U.S.C. § 2000e; DEL. CODE ANN. tit. 19, § 711. Defendant moves to dismiss Plaintiff's claims pursuant to FED. R. CIV. P. 12(b)(6). (D.I. 10).

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

Rule 8 requires a complainant to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 12(b)(6) allows the accused party to bring a motion to dismiss the claim for failing to meet this standard. A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

The factual allegations do not have to be detailed, but they must provide more than labels, conclusions, or a "formulaic recitation" of the claim elements. *Id.* at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."). Moreover, there must be sufficient factual matter to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facial plausibility standard is satisfied when the complaint's factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)).

### B. Failure to Accommodate

Title VII makes it unlawful for an employer to discriminate against an employee based on that employee's religion. 42 U.S.C. § 2000e-2(a)(1). The statute defines "religion" to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

To establish a prima facie case of religious discrimination under Title VII based on a failure to accommodate theory, an employee must show that (1) the employee "held a sincere religious belief that conflicted with a job requirement," (2) the employee "informed their employer of the conflict," and (3) the employee was "disciplined for failing to comply with the conflicting requirement." *Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*, 877 F.3d 487, 490 (3d Cir. 2017). "Plaintiffs are not required to establish each element to survive a motion to dismiss; they must simply allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of their claims." *Finkbeiner v. Geisinger Clinic*, 623 F. Supp. 3d 458, 465 (M.D. Pa. 2022) (citing *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016)).

A district court's inquiry into whether a plaintiff has plausibly plead the first prong of a prima facie religious discrimination claim is limited to determining whether the belief is (1) "sincerely held" and (2) religious within the plaintiff's "own scheme of things." *Welsh v. United States*, 398 U.S. 333, 339 (1970) (quoting *United States v. Seeger*, 380 U.S. 163, 185 (1965)).

With respect to the first prong of this inquiry, "[w]hether a belief is sincerely held is a question of fact." *Geerlings v. Tredyffrin/Easttown Sch. Dist.*, 2021 WL 4399672, at *6 (E.D. Pa. Sept. 27, 2021) (citing *Seeger*, 380 U.S. at 185).

4

With respect to the second prong, determining whether a plaintiff's beliefs are religious "presents a most delicate question." *Africa v. Pennsylvania*, 662 F.2d 1025, 1031 (3d Cir. 1981). "[I]t is nonetheless incumbent upon the court to ensure that the alleged beliefs are rooted in a plaintiff's religion and are entitled to the broad protections guaranteed thereunder." *Aliano v. Twp. of Maplewood*, 2023 WL 4398493, at *5 (D.N.J. July 7, 2023) (citing *Fallon*, 877 F.3d at 490). "The notion that all of life's activities can be cloaked with religious significance" cannot transform an otherwise secular idea into a religious belief. *Africa*, 662 F.2d at 1035. "[T]he very concept of ordered liberty" precludes allowing any individual "a blanket privilege 'to make his own standards on matters of conduct in which society as a whole has important interests.'" *Africa*, 662 F.2d at 1031 (quoting *Wisconsin v. Yoder*, 406 U.S. 205, 215–16 (1972)).

The Third Circuit has adopted the three *Africa* factors to differentiate between views that are "religious in nature" and those that are "essentially political, sociological, or philosophical." *Fallon*, 877 F.3d at 490–91 (quoting *Seeger*, 380 U.S. at 164); *Africa*, 662 F.2d at 1032. A judge must determine whether the beliefs in question (1) "address fundamental and ultimate questions having to do with deep and imponderable matters," (2) "are comprehensive in nature," and (3) "are accompanied by certain formal and external signs." *Fallon*, 877 F.3d at 491 (quoting *Africa*, 662 F.2d at 1032) (cleaned up).

The *Africa* court tackled the issue of analyzing non-traditional "religious" beliefs or practices by "look[ing] to familiar religions as models in order to ascertain, by comparison, whether the new set of ideas or beliefs is confronting the same concerns, or serving the same purposes, as unquestioned and accepted 'religions.'" *Africa*, 662 F.2d at 1032 (quoting *Malnak v. Yogi*, 592 F.2d 197, 205 (3d Cir. 1979) (Adams, J., concurring)); *Fallon*, 877 F.3d at 491 (describing the process as considering "how a belief may occupy a place parallel to that filled by

God in traditionally religious persons."). The *Africa* factors were adopted as "three 'useful indicia' to determine the existence of a religion" pursuant to this "definition by analogy" approach. *Africa*, 662 F.2d at 1032. Their applicability to a person who professes a more widely recognized, "traditional" religion is a little less obvious.[2] However, because individuals cannot "cloak" all personal beliefs "with religious significance," a court must still scrutinize whether a sincerely held belief, asserted by someone claiming a recognized religion, is sufficiently connected to their religion. *Id.* at 1035; *see Griffin v. Massachusetts Dep't of Revenue*, 2023 WL 4685942, at *5 (D. Mass. July 20, 2023) ("[T]he issue in this case is not whether plaintiff has asserted a plausible claim that she has a personal religious faith. . . . Plaintiff does not claim that she has suffered unlawful discrimination because she believes in God. Rather, she claims that she has suffered unlawful discrimination because she was required to comply with the COVID-19 vaccination requirement. The critical question, therefore, is whether the complaint alleges sufficient plausible facts from which it could be reasonably inferred that being vaccinated against COVID-19 violates a tenet or principle of her religious belief.").

Of course, individuals may have religious beliefs which are not widely accepted within their religion. *See Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 708 (1981) ("The guarantee of free exercise is not limited to beliefs which are shared by all of the members of a religious sect"); 29 C.F.R. § 1605.1 ("The fact that no religious group espouses such beliefs or the fact that the religious group to which the individual professes to belong may not accept such belief will not determine whether the belief is a religious belief of the employee or prospective employee."). Beliefs of this nature would, logically, fail to be sufficiently linked to the

---

[2] Plaintiff follows a recognized religion that already meets the three *Africa* factors. (*See* D.I. 1 ¶ 17).

individual's claimed religion and need to satisfy the *Africa* standard to qualify as religious beliefs.

"[The DDEA] prohibits employment discrimination in statutory language nearly identical to Title VII." *Spady v. Wesley Coll.*, 2010 WL 3907357, at *3 n. 4 (D. Del. Sept. 29, 2010); *see* DEL. CODE ANN. tit. 19, § 711(b). "[Courts] evaluate plaintiffs' DDEA claims under the same framework used to evaluate Title VII claims." *Spady*, 2010 WL 3907357, at *3 n. 4 (citing *Witcher v. Sodexho, Inc.*, 247 F. App'x 328, 329 n. 1 (3d Cir. 2007); *Hyland v. Smyrna Sch. Dist.*, 608 F. App'x 79, 83 n. 5 (3d Cir. 2015) (instructing that "the standards under Title VII and the DDEA are generally the same").

### C. Disparate Treatment

To establish a prima facie case of religious discrimination under Title VII based on a disparate treatment theory, an employee must show that (1) the employee is "a member of a protected class," (2) the employee "suffered an adverse employment action," and (3) "nonmembers of the protected class were treated more favorably." *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 281–82 (3d Cir. 2001). Depending on whether the plaintiff proceeds under a pretext or mixed-motive theory, they must ultimately prove that their protected status was either a "motivating" or a "determinative" factor in the employer's challenged action. *Connelly*, 809 F.3d at 787–88.

### III. DISCUSSION

#### A. Failure to Accommodate

At this stage of the case, only one issue exists—whether Plaintiff has sufficiently pled that the belief upon which her objection to receiving the COVID-19 vaccine was based is a religious belief. "[T]o adequately plead a 'religious belief,' a plaintiff must allege some facts

regarding the nature of her belief system, as well as facts connecting her objection to that belief system." *Aliano*, 2023 WL 4398493, at *5. "In other words, she must demonstrate that her objection arises from a subjective belief that is tied to her belief system which meets the *Africa* factors." *Id.* (citing *Africa*, 662 F.2d at 1032; *Fallon*, 877 F.2d at 492–93 (concluding that the plaintiff's "anti-vaccination beliefs are not religious" but providing "[t]his is not to say that anti-vaccination beliefs cannot be part of a broader religious faith; in some circumstances, they can, and in those circumstances, they are protected")); *see also Brown v. Child.'s Hosp. of Phila.*, 794 F. App'x 226, 227 (3d Cir. 2020) ("[I]t is not sufficient merely to hold a 'sincere opposition to vaccination'; rather, the individual must show that the 'opposition to vaccination is a religious belief.'" (quoting *Fallon*, 877 F.3d at 490)); *Griffin v. Massachusetts Dep't of Revenue*, 2023 WL 4685942, at *5 (D. Mass. July 20, 2023); *Ellison v. Inova Health Care Servs.*, 2023 WL 6038016, at *6 (E.D. Va. Sept. 14, 2023) (A plaintiff should "provide[] sufficient allegations regarding [their] subjective personal beliefs, how those beliefs are related to [their] faith, and how those beliefs form the basis of [their] objection to the COVID-19 vaccination."). Defendant argues that Plaintiff's objection to the vaccine stems from Plaintiff's personal moral code rather than from her religious beliefs.[3] (D.I. 11 at 7–16; D.I. 14 at 5–9).

Plaintiff identifies two categories of beliefs which she argues qualify as religious beliefs. (*See* D.I. 17 at 6 (placing Plaintiff under the "Fetal Stem Cell Argument" and "Cannot Defile Body Because it is a Temple of the Holy Spirit" categories)). In addition, her Complaint

---

[3] Defendant does not challenge Plaintiff's assertion that her religious faith of Christianity meets the *Africa* test. Rather, Defendant argues the beliefs on which Plaintiff's objection to the vaccine is based are secular beliefs based on Plaintiff's personal moral code, as opposed to religious beliefs that form a part of Plaintiff's Christian faith. (*See* D.I. 11 at 7–16; D.I. 14 at 5–9). I therefore address only the questions at issue: whether Plaintiff has sufficiently connected her objection to the vaccine to a religious belief tied to her Christian faith or whether the beliefs that form the basis of Plaintiff's objection would otherwise satisfy the *Africa* standard.

8

describes her belief that "God requires her to follow her conscience." (D.I. 1 ¶ 21). For the following reasons, I find Plaintiff has failed to adequately plead facts that show any of these categories are religious beliefs that form the basis of her objection to the COVID-19 vaccine.

### 1. "Body is a Temple" Belief

Plaintiff's Complaint does not include a copy of her own exemption form, noting that the "documents are no longer in Plaintiff's possession but are believed to be in Defendant's possession." (D.I. 1 ¶ 20). The Complaint does attach the letter from Plaintiff's pastor that she submitted as part of her exemption request. (D.I. 1-1, Ex. A).

The letter explains Plaintiff's belief that "our bodies are a temple of the Holy Spirit," quoting several Bible verses for this proposition. (*Id.* at 2–3 of 3 (quoting 1 Corinthians 3:16, 6:19 (KJV) ("Know ye not that ye are the temple of God, and that the Spirit of God dwelleth in you? If any man defiles the temple of God, him shall God destroy; for the temple of God is holy, which temple ye are. . . . What? Know ye that your body is the temple of the Holy Ghost which is in you, which ye have of God, and ye are not your own?"); 2 Corinthians 7:1 ("Having therefore these promises, dearly beloved, let us cleanse ourselves from all filthiness of the flesh and spirit, perfecting holiness in the fear of God.")))). He explains, "It is a God-given responsibility and requirement for us to protect physical integrity of my Body against unclean food and injections." (*Id.* at 3).

Plaintiff's pastor, however, does not explain how Plaintiff's religious beliefs lead to the conclusion that the COVID-19 vaccine will defile her body. The letter does not describe any religious belief that guides followers in determining what is "unclean." The pastor's conclusory statements, such as "additives in vaccines [are] considered contaminants from a biblical standpoint," fall short of indicating any religious guideposts. (*Id.*). The letter does state, "These

9

vaccines to her are unclean." To the extent that Plaintiff is arguing her personal conception of what is harmful qualifies as a religious belief, this interpretation is foreclosed under *Africa*. Concluding otherwise would grant Plaintiff "the type of 'blanket privilege' that undermines our system of ordered liberty." *Ellison*, 2023 WL 6038016, at *5 (citing *Africa*, 663 F.2d at 1031).[4]

Rather than tying Plaintiff's objection to religious beliefs, Plaintiff's pastor's letter focuses on the experimental nature of the vaccine and the potential harm it may cause:

> The current vaccines are experimental and not vetted through the normal processes of human trials over long periods of time. In fact, trials are currently ongoing and won't end on many of them for a few years. We believe they are being used as an experiment on the population at large and one voluntary reporting data base has reported over 40,000 deaths in America from recipients, not including those that have not been reported due to the lack of transparency. A group of medical doctors who treat Covid with other treatments, like available medicines, have treated over 435,000 Covid patients with not one single death. The amount of neurological side effects is an unacceptable risk she is not willing to take, and many of the health professionals in our church have also seen horrible reactions to the experimental vaccinations. The untested, experimental rewriting of the DNA to produce a spike protein that crosses the blood brain barrier is a huge risk and in our religious viewpoint a violation of God's requirements to not defile the body.
>
> In fact, a recent study at Washington University School of Medicine in St. Louis released an article that you may want your superiors to consider. Which would be allowing an antibody test as an alternative to forcing vaccinations as a requirement of employment. Some experts warn there will be a large number of deaths from this vaccination in the near future, and if they are correct, makes the hospital susceptible to a class action wrongful death lawsuit. . . .
> . . . .

---

[4] Plaintiff's counsel argued that whether a belief amounted to a "blanket privilege" presents an issue of sincerity that should be reserved for a jury. (Hearing Tr. at 33:3–14). The *Africa* court, however, indicated that a principal reason that courts engaged in the practice of making "uneasy differentiations" between religious and nonreligious beliefs was to prevent any individual from retaining a "blanket privilege 'to make his own standards on matters of conduct in which society as a whole has important interests.'" *Africa*, 662 F.2d at 1031. I find it proper to consider this question when dealing with religiosity. Other district courts have likewise examined the "blanket privilege" question at the motion to dismiss stage. *See, e.g.*, *Lucky v. Landmark Med. of Mich., P.C.*, 2023 WL 7095085, at *4–7 (E.D. Mich. Oct. 26, 2023); *Ellison*, 2023 WL 6038016, at *5; *Ulrich v. Lancaster Gen. Health*, 2023 WL 2939585, at *5 (E.D. Pa. Apr. 13, 2023); *Blackwell v. Lehigh Valley Health Network*, 2023 WL 362392, at *8 (E.D. Pa. Jan. 23, 2023); *Finkbeiner*, 623 F. Supp. 3d at 465.

> Vaccines contain, albeit small, neurotoxins, hazardous substances, attenuated viruses, animal parts, foreign DNA, albumin from human blood, carcinogens and chemical wastes that are proven harmful to the human body.

(*Id.* at 2–3 of 3 (cleaned up)). Plaintiff's objection is "predicated fundamentally on her concerns with the safety of the vaccine." *Passarella v. Aspirus, Inc.*, 2023 WL 2455681, at *5 (W.D. Wis. Mar. 10, 2023). Even the conclusory assertion regarding "God's requirements to not defile the body" is grounded in a concern regarding the medical "risk" that arises from the vaccine's "experimental" nature. (*Id.* at 2). Plaintiff's medical beliefs do not qualify as religious beliefs under *Africa*. "It takes more than a generalized aversion to harming the body to nudge a practice over the line from medical to religious." *Geerlings*, 2021 WL 4399672, at *7; *see also Fallon*, 877 F.3d at 492. "The notion that we should not harm our bodies is ubiquitous in religious teaching, but a concern that a treatment may do more harm than good is a medical belief, not a religious one." *Geerlings*, 2021 WL 4399672, at *7 (quoting *Fallon*, 877 F.3d at 492) (cleaned up). Plaintiff therefore fails to adequately link her objection to the COVID-19 vaccines to religious beliefs based on Plaintiff's "Body is a Temple" belief.

At oral argument, Plaintiff's counsel took the position that "[h]arming my body is the religious belief" expressed by Plaintiff. (Hearing Tr. at 34:15–35:12 ("[I]f I believe [the vaccine] is going to cause long-term harm to my body, then my truly-held religious belief is that my body is a temple of the Holy Spirit, and I should put nothing in my body that's going to harm it. That's religious belief.")). Plaintiff's counsel effectively seeks to "cloak[] with religious significance" Plaintiff's concern that the vaccine will harm her body. *Africa*, 662 F.2d at 1035. The Third Circuit has already rejected such a position. *Id.* (explaining "[t]he notion that all of life's activities can be cloaked with religious significance" cannot transform an otherwise secular idea into a religious belief). Several other district courts handling similar religious discrimination

11

cases involving the COVID-19 vaccine have also found such medical judgments do not qualify as religious beliefs. *See, e.g., McKinley v. Princeton Univ.*, 2023 WL 8374486, at *4 (D.N.J. Dec. 1, 2023); *Ellison*, 2023 WL 6038016, at *5; *Winans v. Cox Auto, Inc.*, 2023 WL 2975872, at *4 (E.D. Pa. Apr. 17, 2023); *Ulrich v. Lancaster Gen. Health*, 2023 WL 2939585, at *5 (E.D. Pa. Apr. 13, 2023); *Passarella*, 2023 WL 2455681, at *5–7; *Geerlings*, 2021 WL 4399672, at *7; *contra, Aliano*, 2023 WL 4398493, at *8–9.

### 2. "Follow her Conscience" Belief

Plaintiff's Complaint states her religious "belief that God requires her to follow her conscience." (D.I. 1 ¶ 21). The pastor's letter states that the "vaccine, with its numerous additives and [its] mechanism for altering the body, is the equivalent of a prohibited 'unclean food' that causes harm to [her] conscience." (D.I. 1-1, Ex. A, at 3 of 3). Plaintiff's belief regarding her "following her conscience" appears tied to Plaintiff's "Body is a Temple" belief discussed above. (*See id.* ("The broad prohibition against consuming anything that might 'defile' the body, and hence the conscience, is stated again in 1 Corinthians 8:7: "Howbeit there is not in every man that knowledge: for some with conscience of the idol unto this hour eat it as a thing offered unto an idol; and their conscience being weak is defiled."); *see also* D.I. 17 at 6). I find Plaintiff inadequately connects this belief to her vaccine objection for the same reasons previously discussed. *See supra* Section III.A.1.

### 3. "Fetal Stem Cells" Belief

Plaintiff's pastor's letter asserts that "[a]t least 27 vaccines contain cells, cellular debris, protein and DNA from aborted babies" and names various vaccines belonging to this list. (D.I. 1-1, Ex. A, at 3 of 3). Notably, however, the COVID-19 vaccine is not listed as one of these vaccines. The letter also lacks any explanation tying her objection to vaccines that contain fetal

cells to her religious beliefs. Plaintiff fails to adequately link her objection to the COVID-19 vaccines to religious beliefs regarding fetal cells. *See Winans*, 2023 WL 2975872, at *4 ("The Complaint does not even identify *why* Plaintiff objects to the use of fetal cell lines in the development of the COVID-19 vaccine; it merely asserts that fetal cell lines were, in fact, used by vaccine developers."); *see also Ellison*, 2023 WL 6038016, at *7; *Aliano*, 2023 WL 4398493, at *10–11.

For the reasons stated above, I find Plaintiff's Complaint does not plausibly allege that Plaintiff's objection to receiving the COVID-19 vaccine was based on a sincerely held religious belief. At oral argument, Plaintiff's counsel agreed that, in the event that I found a plaintiff had not adequately pled a religious belief, dismissal with prejudice was the proper path forward. (Hearing Tr. at 65:1–9). Plaintiff's counsel caveated his concession by arguing there were some cases where "the Plaintiff should have been given a chance to flesh out their opinion" because they asked for, and did not receive, the opportunity to appeal Defendant's decision to deny her accommodation request. (*Id.* at 65:8–19).

The question before me, however, is not whether the law required Defendant's accommodation request procedure to include an appeals process. "The motion to dismiss attacks what was pled in the complaint, not whether [Plaintiff] could or would have provided more information about her alleged religious objection to the vaccine" in her exemption request. *Lucky v. Landmark Med. of Mich., P.C.*, 2023 WL 7095085, at *8 (E.D. Mich. Oct. 26, 2023). "Put differently: the instant motion to dismiss is addressed to the first element of a religious discrimination claim: whether [Plaintiff] had a sincerely held religious belief that conflicted with an employment requirement." *Id.* "What she told her . . . employer goes to the second element of the claim, whether she informed the employer about the conflict." *Id.*

13

I nevertheless believe Plaintiff may be able to successfully plead a sincerely held religious belief if given the opportunity to amend her Complaint. I will therefore dismiss Plaintiff's failure to accommodate claim without prejudice.

### B. Disparate Treatment

Defendant argues that Plaintiff has failed to sufficiently plead a religious discrimination claim under Title VII based on disparate treatment. (D.I. 11 at 16). Plaintiff states that she has not yet pled disparate treatment. (D.I. 12 at 19–20). I agree with Defendant that Plaintiff's assertion of "differential treatment" presents some confusion about whether a disparate treatment claim has been raised. (D.I. 14 at 9 n. 23). Nevertheless, since Plaintiff states she is not now pleading disparate treatment, I accept that she is not, and I will dismiss Defendant's argument as moot.

### C. Plaintiff's DDEA Claims

A federal court has supplemental jurisdiction over a state law claim when the claim "arise[s] out of a common nucleus of operative fact" with the claims over which the court has original jurisdiction. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966); *see* 28 U.S.C. § 1367(a). A federal court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(3). Given my disposition of Plaintiff's Title VII claims, I decline to exercise supplemental jurisdiction over Plaintiff's remaining DDEA claims. I will dismiss Plaintiff's claims under Count II without prejudice.

### IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (D.I. 10) is GRANTED in part and DISMISSED as moot in part.

An appropriate order will issue.

15